IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

HARLEYSVILLE LAKE STATES )
INSURANCE COMPANY, )
 )
       Plaintiff, )
 )
       v. ) No. 13 C 6391
 )
LANCOR EQUITIES, LTD., et al., )
 )
       Defendants. )

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant Lancor Equities, Ltd.'s (Lancor) and Defendant Western Properties, LP's (Western) (collectively referred to as "Lancor Parties") motion to dismiss, and motion in the alternative to strike. For the reasons stated below, the motions are denied.

## BACKGROUND

Plaintiff Harleysville Lake States Insurance (Harleysville) is an insurance company, that allegedly issued an insurance policy (Policy) to Western providing coverage over a commercial property owed by Western in Chicago, Illinois (Property). Lancor allegedly managed the Property for Western. In 2005, the City of Chicago (City) allegedly initiated a civil action against the Lancor Parties for

1

violations of the Chicago Municipal Code (2005 Code Enforcement Action) relating to fire suppression and fire safety deficiencies in the building on the Property (Building). The 2005 Code Enforcement Action was allegedly resolved in 2007. However, on May 4, 2009, the City again allegedly initiated civil enforcement proceedings for code violations against Lancor Parties relating to fire suppression and fire safety deficiencies in the Building (2009 Code Enforcement Action).

In the summer of 2009, Lancor parties allegedly contacted Harleysville and asked for a quote for insurance over the Property. On June 26, 2009, Al Giudice (Giudice), who allegedly controls the operations of Lancor Parties' properties, made certain representations to Harleysville. Giudice allegedly indicated that the Building was entirely covered by a fire suppression sprinkler system (Sprinkler System) and that there were no uncorrected fire code violations. The Policy was allegedly issued on December 17, 2009.

The Policy was allegedly renewed annually in December 2010 and December 2011. In January 2012, Harleysville allegedly inspected the fire suppression system in the Building, and made certain recommendations to Lancor Parties regarding the Sprinkler System. On August 13, 2012, the fire suppression sprinkler system in the Building was allegedly rendered completely inoperable when thieves broke into the Building and stole electrical components from the fire pump system (August 2012 Damage). Although throughout the remainder of 2012, the Lancor Parties allegedly worked with Harleysville to comply with Harleysville's recommendations as to the fire and suppression system at the Building, Lancor Parties allegedly failed to inform

Harleysville of the August 2012 Damage or that the damage rendered the Sprinkler System inoperable and without electrical power.  Lancor Parties also allegedly failed to mention that valves in the Sprinkler System leading to the sprinkler heads had been closed, preventing any water from reaching the sprinkler heads.  On December 17, 2012, the Policy was allegedly renewed for the policy period of December 17, 2012 to December 17, 2013.

Twelve days later, on December 29, 2012, a person allegedly started a fire (Fire) on a platform next to the Building that spread to the Building and destroyed a significant portion of the Building.  Lancor Parties subsequently sought payments pursuant to the Policy for the fire damage and Harleysville refused to provide coverage, contending that the Increased Hazard Exclusion in the Policy (IH Exclusion) precluded coverage for Lancor Parties.  Harleysville also contends that coverage is not owed to Defendant U.S. Bank, N.A. (U.S. Bank) under the Mortgagee Provision of the Policy.  Harleysville brought the instant action and seeks in its amended complaint a declaratory judgment stating that Harleysville is not required to provide coverage or loss damage to Lancor Parties (Count I), and a declaratory judgment stating that Harleysville is not required to provide coverage or loss damage to the Property to U.S. Bank as the mortgagee for the Property (Count II).  Harleysville also seeks reimbursement for costs incurred by Harleysville in connection with having to pay for the demolition of the Property.  Lancor Parties now move to dismiss the instant action, and move in the alternative to strike certain allegations from the amended complaint.

# LEGAL STANDARD

In ruling on a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) (Rule 12(b)(6)), the court must draw all reasonable inferences that favor the plaintiff, construe the allegations of the complaint in the light most favorable to the plaintiff, and accept as true all well-pleaded facts and allegations in the complaint. *Appert v. Morgan Stanley Dean Witter, Inc.*, 673 F.3d 609, 622 (7th Cir. 2012); *Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002). A plaintiff is required to include allegations in the complaint that "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level'" and "if they do not, the plaintiff pleads itself out of court." *E.E.O.C. v. Concentra Health Services, Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)(quoting in part *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007)); *see also Morgan Stanley Dean Witter, Inc.*, 673 F.3d at 622 (stating that "[t]o survive a motion to dismiss, the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," and that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged")(quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009))(internal quotations omitted). Pursuant to Federal Rule of Civil Procedure 12(f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).

**DISCUSSION**

Lancor Parties argue that Harleysville has no basis to bar coverage under the Policy to either Lancor Parties or U.S. Bank. In the alternative, Lancor Parties argue that certain allegations included in the amended complaint are irrelevant to the Policy coverage issues in this case and that such allegations should be stricken.

I. Motion to Dismiss

Lancor Parties contend that based on the terms of the Policy, coverage is owed to themselves and to U.S. Bank.

A. Lancor Parties

Lancor Parties argue that the IH Exclusion is not applicable and should not be a basis to deny coverage to Lancor Parties for the Fire. The Policy provided the following: "Increased Hazard - 'We' do not pay for loss occurring while the hazard has been materially increased by any means within 'your' knowledge of 'your' control." (A. Compl. Par. 17). Lancor Parties argue that, under case law, such an exclusion has been deemed to apply only if there was an increase in the hazard over and above any hazard that existed at the time the Policy was issued. Lancor Parties argue that since Harleysville alleges that the August 2012 Damage occurred prior to the latest renewal in December 2012, the increased hazard already existed and does not fall under the IH Exclusion. Lancor Parties cite a variety of caselaw, such as *Imperial Ins. Co. v. National Homes Acceptance Corp.*, 626 S.W.2d 327 (Tex. App.

5

1981), which is not controlling precedent and is merely persuasive precedent. (Reply 3).

Lancor Parties also cite *Rossini v. St. Paul Fire & Marine Ins. Co. of St. Paul, Minn.*, 188 P. 564 (Cal. 1920) and *Security Ins. Co. of New Haven v. Dazey*, 78 F.2d 537 (7th Cir. 1935), which relies on *Rossini*. (Mot. 6). In *Rossini*, the court held that "[t]he term increase of hazard denotes an *alteration or change* in the situation or condition of the property insured which tends to increase the risk . . ., and ordinarily refers only to such hazard as results from physical changes in the insured property after the issuance of the policy." *Id.* at 568 (emphasis in original)(internal quotations omitted). However, in *Rossini*, the court indicated that such a principle is premised on an apparent waiver by the insurer as to such a hazard, stating that, "*in the absence of fraud or concealment*, the hazard in respect to the risk assumed cannot be enhanced or enlarged by a mere continuation of the conditions and uses existing at the time the policy was issued." *Id.* (emphasis added).

In the instant action, Harleysville has presented allegations in its amended complaint that suggest fraud by Lancor Parties or concealment of a hazard by them. Harleysville alleges that in December 2009, when the Policy was originally issued, Lancor Parties represented to Harleysville that the Building was "100% Sprinklered," and that there were no "uncorrected fire code violations." (A. Compl. Par. 29-31). Harleysville further alleges that although at the time the Policy was issued, the 2009 Code Enforcement Action was ongoing, and that there were deficiencies in the fire safety and suppression systems in the Building, Lancor Parties never informed

6

Harleysville of such facts. (A. Compl Par. 24-26, 45). Harleysville alleges that it was not even aware of any code enforcement actions relating to the Property until after the Fire in 2012. (A. Compl. Par. 45). Thus, Harleysville's allegations suggest an increased hazard over and above any hazard that Harleysville agreed to when issuing the Policy in 2009. In regard to Lancor Parties' argument that the latest renewal of the Policy is the relevant date to consider, nothing in the plain language of the Policy indicates that the IH Exclusion would be restarted with each renewal of the Policy.

Even if the court were to focus on the December 2012 renewal, twelve days before the Fire, as proposed by Lancor Parties, the result is the same. Harleysville alleges that in January 2012, it inspected the Property to confirm its risk exposure and to assess whether it should renew the Policy in December 2012. (A. Compl. Par. 35). The inspection allegedly showed that the Sprinkler System was operational on that date. (A. Compl. Par. 36). However, Harleysville also alleges that it subsequently recommended certain "corrective action to ensure that the [Sprinkler System] continued to function properly." (A. Compl. Par. 37). Harleysville then allegedly corresponded with Lancor Parties, both in February 2012 and May 2012, regarding the completion of the recommendations for the Sprinkler System. (A. Compl. Par. 39-40). On August 13, 2012, thieves allegedly broke into the building and stole equipment from the Sprinkler System's fire pump which rendered the Sprinkler System "inoperative." (A. Compl. Par. 47-51). Lancor Parties allegedly were aware of the August 2012 Damage and never restored the Sprinkler System to

7

an operational status. (A. Compl Par. 52-55). Lancor Parties also allegedly closed the valves controlling flow of water to sprinkler heads so that water could not flow to the sprinkler heads. (A. Comp Par. 60-61). Yet on December 4, 2012, Giudice, when assuring Harleysville that its recommendations had been followed, allegedly failed to disclose the August 2012 Damage, or that the Sprinkler System was inoperable and lacked electrical power, or that the valves leading to the sprinkler heads had been closed. (A. Compl. Par. 42-46).

The allegations in the amended complaint, which must be accepted as true at this juncture, clearly suggest concealment on the part of Giudice. For example, on December 4, 2012, Giudice informed Harleysville that Lancor Parties had followed Harleysville recommendations and had replaced a missing protective cap on the "fire department pumper" and had also increased the temperature in the Building so that the water in the Sprinkler System would not freeze. (A. Compl. Par. 42). The amended complaint, however, suggests that such measures were virtually meaningless and Giudice allegedly failed to explain that to Lancor Parties. Thus, the allegations in the amended complaint, which must be accepted as true at this juncture, indicate that Lancor Parties concealed a hazard from Harleysville at the time of the December 2012 renewal of the Policy. The alleged problems with the Sprinkler System, which Harleysville alleges materially contributed to the destruction of the Building in the Fire, clearly would constitute an increased hazard that falls within the IH Exclusion. *See Chicago Title & Trust Co. v. Illinois Fair Plan Ass'n*, 414 N.E.2d 205, 208 (Ill. App. Ct. 1980)(stating that "[t]he term increase

8

of hazard denotes an alteration or change in the condition of the property which tends to increase the risk"). Therefore, since allegations in the amended complaint suggest concealment of the hazard, Lancor Parties' motion to dismiss the claims brought against them is denied.

### B. U.S. Bank

Lancor Parties also argue that U.S. Bank should be covered by the Policy. The court first notes that Lancor Parties have not provided any basis giving them standing to argue on behalf of U.S. Bank. U.S. Bank in fact has already filed an answer to the amended complaint in this case instead of a motion to dismiss. Regardless, Lancor Parties have not shown that the claim brought against U.S. Bank should be dismissed. The Mortgagee Provision in the Policy provides that the Mortgagee will not be covered if the "mortgagee is aware of changes in ownership or substantial increase in risk and does not notify" Harleysville. (A. Compl. Par. 101). Lancor Parties argue that there is no indication in the amended complaint that U.S. Bank had knowledge of the alleged deficiencies in the fire suppression and prevention systems in the Building. However, Harleysville does present facts to suggest that U.S. Bank may have acquired such knowledge. For example, Harleysville alleges that U.S. Bank was a named party in both the 2005 Code Enforcement Proceedings and the 2009 Code Enforcement Proceedings. (A. Compl. Par. 105-08). The allegations in the amended complaint, which must be accepted as true at this juncture are sufficient to state a claim against U.S. Bank, which incidently

U.S. Bank has itself recognized when filing its answer to the amended complaint. Therefore, based on the above, Lancor Parties' motion to dismiss is denied.

II. Motion to Strike

Lancor Parties move in the alternative to strike certain allegations in the complaint which they contend are not relevant in this action. As the Seventh Circuit explained in *Redwood v. Dobson*, 476 F.3d 462 (7th Cir. 2007), generally, "[m]otions to strike sentences or sections out of briefs waste everyone's time" and "[m]otions to strike disserve the interest of judicial economy." *Id.* at 470. Lancor Parties seek to have certain allegations stricken relating to a period that is not relevant in the instant action. Even if Lancor Parties were correct regarding the relevant period, the allegations provide background information and a context for the other allegations in the amended complaint. Lancor Parties have not pointed to any facts that are redundant, immaterial, impertinent, or scandalous such that the court must intervene and strike them. Therefore, the motion to strike is denied.

## CONCLUSION

Based on the foregoing analysis, Lancor Parties' motion to dismiss and motion to strike are denied.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: February 18, 2014