UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Harleysville Lake States Insurance, Company, | ) ) ) |
| | ) Case No. 1:13-cv-06391 |
| Plaintiff, | ) ) Judge Samuel Der-Yeghiayan |
| vs. | ) ) |
| Lancor Equities, Ltd., Western Properties, LP, and U.S. Bank, National Association as Successor to Park National Bank as Successor to Cosmopolitan Bank Trust #30462, | ) ) ) ) ) |
| Defendants. | ) ) |
| U.S. Bank National Association, a national banking association, as successor-in interest interest to the Federal Deposit Insurance Corporation as receiver of Park National Bank, | ) ) ) ) ) |
| Counter-Plaintiff, | ) ) |
| vs. | ) ) |
| Harleysville Lake States Insurance Company, | ) ) |
| Counter-Defendant. | ) |

<u>**PLAINTIFF/COUNTER-DEFENDANT HARLEYSVILLE LAKE STATES INSURANCE COMPANY'S RESPONSES TO DEFENDANT/COUNTER-PLAINTIFF LANCOR EQUITIES, LTD AND WESTERN PROPERITES, LP'S FIRST SET OF REQUESTS FOR PRODUCTION**</u>

Plaintiff/Counter-Defendant, Harleysville Lake States Insurance Company ("Harleysville"), by and through its attorneys, Sanchez, Daniels & Hoffman, LLP, Nelson Brown & Co. and Karbal, Cohen, Economou, Silk & Dunne, LLC, and for its Responses to


EXHIBIT A

Defendants/Counter-Plaintiffs, Lancor Equities, Ltd. and Western Properties, LP's (collectively "Lancor") First Set of Requests for Production, states as follows:

## PRELIMINARY STATEMENT

Harleysville's response to production request does not waive Harleysville's right to challenge the relevancy, materiality, and admissibility of the information or documents in any subsequent proceeding or trial in this action.

Harleysville's discovery is ongoing and its response to production request is based upon the information known to it at this time. The fact that Harleysville states in answer to some request that it will produce relevant, non-privileged documents, if any, does not mean that Harleysville has yet determined that such documents exist or that it has located such documents. Harleysville reserves the right to supplement or amend its response to production request prior to trial as provided by law and the rules of this Court. Harleysville's General Objections to the production request are set forth below. The assertion of additional specific objections to certain requests shall not be construed as to waive any applicable General Objections.

## GENERAL OBJECTIONS TO REQUESTS FOR PRODUCTION

1. The objections and responses to specific requests are supplied pursuant to the following general objections. These general objections are incorporated into and made a part of each specific response. These general objections are set forth here to avoid the redundancy of restating them in each response. These general objections may be specifically referred to in the response to certain requests for the purpose of clarity, but failure to refer specifically to any general objection should not be construed as a waiver of any general objection.

2. Nothing contained herein shall be construed as an admission by Harleysville with respect to admissibility or relevance of any facts or documents, or of the truth or accuracy of any characterization contained in the requests.

3. Whenever a request seeks to impose on Harleysville conditions, requirements or obligations which are greater, broader or different than those imposed by the applicable Federal Rules of Civil Procedure or the local rules of the Northern District of Illinois, Harleysville objects to such request and shall respond only in conformance with the applicable rules.

4. Harleysville further objects to discovery concerning policies and claims other than the policy and claim at issue in the litigation, on the grounds that such discovery is beyond the scope of permissible discovery under the Federal Rules of Civil Procedure and the local rules of the Northern District of Illinois, and other applicable rules of law, in that it is irrelevant to this action and is not reasonably calculated to lead to the discovery of admissible evidence.

5. Harleysville objects to these requests to the extent that they seek information

2

protected from disclosure by the attorney-client privilege, the work product doctrine, or any other applicable privilege or seek material prepared in anticipation of or after the commencement of this litigation or for trial or seek information that is otherwise not discoverable under the Federal Rules of Civil Procedure or the local rules of the Northern District of Illinois.

6. Harleysville objects to the requests to the extent that they seek information or documents that fall within the scope of the work product doctrine and that contain or reflect mental impressions, conclusions, opinions or legal theories of the representative of Harleysville concerning this litigation.

7. Harleysville objects to the requests to the extent that they are overly broad, unduly burdensome, harassing and oppressive.

8. Harleysville's relationship with its policyholders is confidential. Therefore, Harleysville objects to the discovery of information concerning any non-party insured (including, but not limited to, information relating to the processing or substance of claims or losses involving any non-party insured) in that the information is confidential, production would violate the confidentiality of Harleysville's relationship with the policyholder involved, and such information contains proprietary information belonging to each policyholder. Harleysville further objects because each such policyholder may have a right to notice and an opportunity to object, and plaintiff may seek to use such information in a manner that is adverse to the interests of the policyholder. Information concerning any non-party insureds also may be subject to attorney-client, settlement or other privileges that are held by policyholders, or the work product doctrine. Furthermore, information concerning the contractual relationships between Harleysville and non-party insureds is irrelevant to plaintiffs' claim against Harleysville and not likely to lead to admissible evidence.

9. Harleysville objects to the requests to the extent that they seek information and/or documents that are confidential or proprietary as to Harleysville or irrelevant to the subject matter of this action or not reasonably calculated to lead to the discovery of admissible evidence.

10. Harleysville objects to the requests to the extent that they seek information and/or documents containing trade secrets, confidential business or other such information.

11. Harleysville objects to the requests to the extent that the information requested is obtainable from other sources available to the public at large, and these other sources are more convenient, less burdensome and less expensive.

12. Harleysville objects to the requests to the extent that the burden or expense of responding to the requests outweighs the likely benefits, taking into account the needs of the case and that the information goes to a collateral issue in the litigation and not to the central issue in the case.

13. Harleysville objects to the production of documents created after the commencement of litigation on the grounds that such documents are not relevant or reasonably

3

calculated to lead to the discovery of admissible evidence or are protected from disclosure by the attorney-client privilege or work product doctrine.

14. Harleysville's responses to the requests are based upon information presently known to Harleysville based upon the undertaking of reasonable effort in the time available. Harleysville will continue to review its materials and reserves the right to supplement, amend or correct these responses and/or objections in the event that further inquiry reveals facts that would justify or require such supplementation, correction or amendment. Harleysville will supplement its responses in conformity with the Federal Rules of Civil Procedure and the local rules of the Northern District of Illinois. If Harleysville at any time supplements, amends or corrects its responses and objections by agreement or otherwise, Harleysville specifically reserves the right to assert any available privilege or other protection as to any information which might otherwise be discoverable in connection with Harleysville's supplementation, correction or amendment.

15. By producing any document, Harleysville does not thereby concede its relevance, materiality or admissibility and does not waive, but rather expressly reserves any and all objections to or with respect to the relevance, materiality or admissibility of such document.

## RESPONSE TO REQUEST FOR PRODUCTION OF DOCUMENTS

1. All documents related to Harleysville's first-party property claim handling philosophies, policies, practices, and/or procedures, including, but not limited to, manuals, plans, technical bulletins, memoranda, directives, letters, guidelines, standards, criteria, codes of conduct and ethics, in effect at the time of the Loss and Claim, and interpretive materials that govern the conduct and ethics of any employee, agent or independent contractor of Harleysville during the handling, adjustment, and appraisal of a first-party property claim. This request includes, but is not limited to, documents that have information regarding Harleysville's claim handling philosophies, policies, practices, procedures, and/or guidelines in effect at the time of the Loss and Claim.

RESPONSE: Harleysville objects to this request as it is overbroad, unduly burdensome and to the extent it seeks information not relevant to this action or reasonably calculated to lead to the discovery of admissible evidence. Harleysville further objects to this request to the extent it seeks information protected by the attorney-client privilege or work product doctrine.

2. All documents used by or referred to by Harleysville in interpreting the provisions and exclusions contained in the Policy including, but not limited to, manuals, technical bulletins, publications, guidelines, memos, standards, criteria, interpretive materials, and practices and procedures.

**RESPONSE**: Harleysville objects to this request as it is overbroad, unduly burdensome and to the extent it seeks information not relevant to this action or reasonably calculated to lead to the discovery of admissible evidence. Harleysville further objects to this request to the extent it seeks information protected by the attorney-client privilege or work product doctrine.

3. All documents related to any complaint or grievance against Harleysville by any insured, from the years 2009 through the present, arising out of a first-party property insurance claim including, but not limited to, the actual complaint, grievance and Harleysville's response to the same.

**RESPONSE**: Harleysville objects to this request as it is overbroad, unduly burdensome and to the extent it seeks information not relevant to this action or reasonably calculated to lead to the discovery of admissible evidence. Harleysville further objects to this request to the extent it seeks information protected by the attorney-client privilege or work product doctrine.

4. Harleysville's personnel file(s) for all personnel, employees, adjusters, representatives, supervisors, and managers involved with the Loss and the Claim, including all such personnel with decision-making authority with respect to the Loss and the Claim, including, but not limited to: job descriptions; annual performance evaluations or appraisals; history of salary and promotions/demotions; and educational records (including, but not limited to, company courses).

RESPONSE: Harleysville objects to this request as it is overbroad, unduly burdensome and to the extent it seeks information not relevant to this action or reasonably calculated to lead to the discovery of admissible evidence. Harleysville further objects to this request on the grounds that it seeks confidential personnel and compensation information.

5. All personnel records, performance goals, plans, and objectives, whether in the form of personnel records, unit goals, divisional goals, regional goals, or interoffice memoranda, or any other papers or documents, which describe the goals, objectives, and plans for the following persons from the years 2009 through the present, including, but not limited to, the following information: (a) the adjuster(s) and representative(s) involved in the Loss and/or the Claim; (b) the supervisors and managers for (a); and (c) the supervisors and managers for (b).

RESPONSE: Harleysville objects to this request as it is overbroad, unduly burdensome and to the extent it seeks information not relevant to this action or reasonably calculated to lead to the discovery of admissible evidence. Harleysville further objects to this request on the grounds that it seeks confidential personnel and compensation information.

6. All documents relating to any Quality Assurance Review Program since 2009, as well as any quality control audits, surveys, or file reviews of the Loss and the Claim, including, but not limited to, home office or regional audits and applicable manuals or guidelines for conducting the audit(s), survey(s), or file review.

RESPONSE: Harleysville objects to this request as it is overbroad, unduly burdensome and to the extent it seeks information not relevant to this action or reasonably calculated to lead to the discovery of admissible evidence.

7. All documents related to Harleysville's strategies, programs, plans, directives, goals, incentives, etc., developed since 2009 related to tracking and measuring the amount of

overpayment or underpayment on a claim, including, but not limited to, Claim Auditing, Results Review, Profit and Growth Review, Performance Plans/Goals, Business Plans, and Learning Plans.

**RESPONSE**: Harleysville objects to this request as it is overbroad, unduly burdensome and to the extent it seeks information not relevant to this action or reasonably calculated to lead to the discovery of admissible evidence.

8. All documents, guidelines, manuals, contracts, bulletins, memoranda, etc., regarding the basis for compensation of any of Harleysville's employees or independent contractors involved in the Loss and/or the Claim including but not limited to contracts, agreements, master agreements, compensation schedules, billing statements and invoices, approved vendor lists, or pre-approval agreements for all persons and entities hired by Harleysville in the Loss and/or the Claim.

**RESPONSE**: Harleysville objects to this request as it is overbroad, unduly burdensome and to the extent it seeks information not relevant to this action or reasonably calculated to lead to the discovery of admissible evidence. Harleysville further objects to this request on the grounds that it seeks confidential personnel and compensation information.

9. Harleysville's underwriting file relating to the Policy including, but not limited to, internal memorandum, internal communications, property inspections, property condition, premium rating, risk rating, ISO forms, ISO records, any loss control or inspection reports of the insured's premises, and a certified copy of the Policy, including all declarations and endorsements.

**RESPONSE**: Harleysville objects to this request as it is overbroad, unduly burdensome and to the extent it seeks information not relevant to this action or reasonably calculated to lead

7

to the discovery of admissible evidence. Harleysville further objects to this request to the extent that it seeks confidential or proprietary information or trade secrets.

Subject to an without waiving its objections, Harleysville previously has produced its underwriting file for the subject policy as documentes HLSIC005014 to HLSIC006853 and a certified copy of the policy, including all declarations and endorsements as documents HLSIC000541 to HLSIC000639.

10. All documents relating to the underwriting of the Policy, including, but not limited to, underwriting publications, technical bulletins, guidelines, memos, standards, criteria, interpretive materials, policies, practices, procedures, and manuals.

RESPONSE: Harleysville objects to this request as it is overbroad, unduly burdensome, vague and ambiguous and to the extent it seeks information not relevant to this action or reasonably calculated to lead to the discovery of admissible evidence. Harleysville further objects to this request to the extent that it seeks confidential or proprietary information or trade secrets.

Subject to and without waiving its objections, Harleysville previously has produced its underwriting file for the subject policy as documents HLSIC005014 to HLSIC006853.

11. All documents relating to loss control surveys or loss control inspections including, but not limited to, publications, technical bulletins, guidelines, memos, standards, criteria, interpretive materials, policies, practices, procedures, and manuals.

RESPONSE: Harleysville objects to this request as it is overbroad, unduly burdensome, vague and ambiguous and to the extent it seeks information not relevant to this action or reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving its objections, Harleysville previously has produced documents regarding loss control inspections performed at the 2400-44 West 21st Street property as documents HLSIC006629 to HLSIC006644.

12. All documents concerning drafting, drafting history, origin, definition, meaning, construction, interpretation, application, and/or modification of the "Increased Hazard" exclusion raised in the Complaint.

RESPONSE: Harleysville objects to this request as it is overbroad, unduly burdensome and to the extent it seeks information not relevant to this action or reasonably calculated to lead to the discovery of admissible evidence. Harleysville further objects to this request to the extent it seeks information protected by the attorney-client privilege or work product doctrine.

13. All reports, correspondence, loss and damage estimates, and advisory documents to or from any person or organization who conducted an investigation into the damage, and/or the scope of the loss and damages suffered as a result of the Loss, and/or the cost to repair or replace the damage suffered as a result of the Loss including, but not limited to, all activity logs, documents reflecting billing and payments, tax ID number printouts, and contracts or retention agreements.

RESPONSE: Harleysville objects to this request as it is overbroad, unduly burdensome and to the extent it seeks information not relevant to this action or reasonably calculated to lead to the discovery of admissible evidence. Harleysville further objects to this request to the extent it seeks information protected by the attorney-client privilege and work product doctrine. Harleysville further objects to this request on the grounds that it requires disclosure of the opinions of expert witnesses and related information prior to the time for expert witness

9

disclosures established by the Court's case management schedule and the Rules of Civil Procedure.

14. All documents known to Harleysville including, but not limited to, statements, correspondence, notes, diagrams, reports or otherwise recorded information, relied on in support of its position with respect to the Loss and the Claim and/or Harleysville's calculation of Lancor's damages suffered as a result of the Loss.

RESPONSE: Harleysville objects to this request as it is overbroad, unduly burdensome and to the extent it seeks information not relevant to this action or reasonably calculated to lead to the discovery of admissible evidence. Harleysville further objects to this request to the extent it seeks information protected by the attorney-client privilege and work product doctrine. Harleysville further objects to this request on the grounds that it requires disclosure of the opinions of expert witnesses and related information prior to the time for expert witness disclosures established by the Court's case management schedule and the Rules of Civil Procedure.

Subject to and without waiving its objections, Harleysville previously produced responsive documents in its claims file for the subject loss and its underwriting file for the subject policy.

15. All documents showing the loss reserve history for the Loss and Claim, including, but not limited to: (a) original reserves and all changes and (b) methods and criteria for setting and changing reserves.

RESPONSE: Harleysville objects to this request as it is overbroad, unduly burdensome and to the extent it seeks information not relevant to this action or reasonably calculated to lead

to the discovery of admissible evidence. Harleysville further objects to this request to the extent it seeks information protected by the attorney-client privilege and work product doctrine.

16. All "Claim Committee" documents (or any other name of a group of two or more of Harleysville's agents, employees, representatives, managers, or supervisors who may meet to discuss first-party property claims), prepared, generated, or received in connection with the Loss and the Claim including, but not limited to:

  a. Procedures or criteria for reviews;
  b. Names of committee members;
  c. Documentary presentations and spreadsheets used at the meeting;
  d. Reports issued by the committee regarding this claim; and
  e. Any other documentation of "committee" deliberations.

**RESPONSE**: Harleysville objects to this request as it is overbroad, unduly burdensome, vague and ambiguous and to the extent it seeks information not relevant to this action or reasonably calculated to lead to the discovery of admissible evidence. Harleysville further objects to this request to the extent it seeks information protected by the attorney-client privilege and work product doctrine.

17. All documents relating to Harleysville's reinsurance coverage – both facultative and treaty – for first-party property claims from the year 2009 up to and including the present, including, but not limited to:

  a. Copies of reinsurance policies, contracts, and/or agreements;
  b. Correspondence to reinsurer(s) relative to the loss and claim;
  c. Reporting requirements;

d. Loss Advice, Reinsurance Reports and/or Bordereaux Reports relative to the loss and claim;

e. Extra-contractual delegation clauses;

f. Savings sharing agreements; and

g. Incentives to reduce loss reserves.

**RESPONSE**: Harleysville objects to this request as it is overbroad, unduly burdensome and to the extent it seeks information not relevant to this action or reasonably calculated to lead to the discovery of admissible evidence. Harleysville further objects to this request to the extent it seeks information that is confidential and that is protected by the attorney-client privilege and work product doctrine.

18. All documents identified, referred to, or relied upon in developing Harlesyville's Answer and Affirmative Defenses to the Counterclaim.

**RESPONSE**: Harleysville objects to this request to the extent it seeks information protected by the attorney-client privilege and work product doctrine. Harleysville further objects to this request on the grounds that it is vague and ambiguous as to which Counterclaim it refers.

Subject to and without waiving its objections, Harleysville previously produced responsive documents in its claims file for the subject loss and its underwriting file for the subject policy

Dated: August 15, 2014

/s/ Louis H. Kozloff

John J. Piegore
Camille Cribaro-Mello
SANCHEZ DANIELS & HOFFMAN, LLP
Attorneys for Harleysville Lake States Insurance Company

333 West Wacker Drive, Suite 500
Chicago, IL 60606
T (312) 641-1555
F (312) 641-3004
JPiegore@sanchezdh.com
cmello@sanchezdh.com


Michael R. Nelson (admitted *pro hac vice*)
Louis H. Kozloff (admitted *pro hac vice*)
NELSON BROWN & Co.
518 Township Line Road, Suite 300
Blue Bell, PA 19422
T (215) 358-5116
mnelson@nelsonbrownco.com
lkozloff@nelsonbrownco.com

Roderick T. Dunne
Linda J. Carwile
KARBAL, COHEN, ECONOMOU, SILK & DUNNE, LLC
150 South Wacker Drive, Suite 1700
Chicago, Illinois 60606
Tel:   (312) 431-3700
Fax:   (312) 431-3670
rdunne@karballaw.com
lcarwile@karballaw.com

# CERTIFICATE OF SERVICE

I, hereby certify that on August 15, 2014 the foregoing, PLAINTIFF/COUNTER-DEFENDANT HARLEYSVILLE LAKE STATES INSURANCE COMPANY'S RESPONSES TO DEFENDANT/COUNTER-PLAINTIFF LANCOR EQUITIES, LTD AND WESTERN PROPERITES, LP'S FIRST SET OF REQUESTS FOR PRODUCTION, were served by U.S. Mail and email upon counsel of record for the parties at the addresses listed below:

Edward Eshoo, Jr.
Andrew M. Plunkett
Michael W. Duffy
Childress Duffy Ltd.
500 N. Dearborn Street, Suite 1200
Chicago, IL 60654
(312) 494-0200
Eshoo@childresslawrers.com
Aplunkett@childresslawyers.com
Mduffy@childresslawyers.com
*Attorneys for Lancor Equities, Ltd.*
*and Western Properties, LP*


Carri A. Conlon
Edmond M. Burke
Chuhak & Tecson, PC
30 S. Wacker Drive, Suite 2600
Chicago, IL 60606
(312) 855-4617
cconlon@chuhak.com
eburke@chuhak.com
*Attorneys for U.S. Bank National Association*


                                                    *s/ Louis H. Kozloff*
                                                    One of the Attorneys for Plaintiff,
                                                    Harleysville Lake States Insurance
                                                    Company